DAVID J. COHEN, ESQ.
California Bar No. 145748
djcohen@bayareacrimlaw.com
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
apguilmartin@bayareacrimlaw.com
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Vernell Thrower**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VERNELL THROWER,<br><br>Defendant. | Case Nos. 19-CR-00043-YGR-12 & 21-CR-00373-YGR-1<br><br>**MR. THROWER'S SENTENCING MEMORANDUM**<br><br>Date: March 24, 2022<br>Time: 10:30 a.m.<br>Ctrm.: YGR |

**I.**

**INTRODUCTION**

It is anticipated that, on March 24, 2022, Vernell Thrower will enter a guilty plea to violations of 18 U.S.C. §922(o), 21 U.S.C. §841(a)(1), and 18 U.S.C. §924(c)(1)(A).[1] These convictions arise from two 2017 incidents: one in which Mr. Thrower assisted in the sale to a confidential informant of a pistol modified to act as an automatic weapon (a "machine gun"), and another in which Mr. Thrower assisted three individuals in the burglary of a marijuana grow

---

[1] Mr. Thrower proceeds with the submission of this sentencing memorandum in anticipation of his plea. In the event a guilty plea is not entered or is otherwise rejected, this memorandum should be deemed withdrawn.

house. Importantly, in connection with the latter crime, Mr. Thrower carried a firearm, giving rise to the §924 charge. These crimes, committed four-and-a-half years ago when Mr. Thrower was in his mid-20s, are no doubt serious. But they are also the last offenses Mr. Thrower, now a father of four with plans to earn his GED and secure steady employment, will commit.

In connection with his anticipated plea, Mr. Thrower must and will serve a five-year term of imprisonment, the mandatory consecutive term imposed by §924. The question presented to this Court, therefore, is whether it is necessary that Mr. Thrower serve a custodial sentence in excess of that required by law, and if so, what additional time in custody is appropriate to impose. United States Probation recommends this Court vary downward from the applicable Guidelines range and impose a custodial sentence of 90 months, representing an additional 30 months on top of the 60 required by §924. Pursuant to 18 U.S.C. §3553(a), Mr. Thrower requests this Court vary downward farther and impose a custodial sentence of 60 months followed by a 3-year term of supervised release. He urges this Court to impose such a sentence in recognition of the significant term of imprisonment it carries (one far longer than any he has before served), the emotional struggles that led to the commission of the offenses of conviction, and his present personal characteristics.

## II.

## STATEMENT OF THE CASE

The probation officer assigned to this case has prepared a detailed and thoughtful presentence report describing, amongst other things, the facts of the offense. *See* dkt. 488. This description recounts the government's theory of the case and summarizes the admissions made in the written plea agreement that it is anticipated will be submitted to this Court on the date of sentencing.

The report also described in brief the sentences imposed to date upon other defendants in the 19-CR-00043 case. These sentences range from 120 months of imprisonment for one particularly culpable defendant (Mr. Rivera) to time-served for one with significant medical issues (Mr. Davis). None of the three co-defendants in the 21-CR-00373 case have been sentenced; one was only recently arrested (and released on an unsecured bond), and the other two remain on fugitive status.

Mr. Thrower has agreed with the government to enter a guilty plea pursuant to a written plea agreement that will be formally submitted to the Court on March 24. This agreement provides for the grouping of all three offenses of conviction and an adjusted offense level, derived from the level applicable to the higher of the two substantive counts, of 19 (corresponding to a punishment range of 46-57 months, given a Criminal History Category of IV). This offense level reflects a downward adjustment for acceptance of responsibility. Consecutive to any sentence imposed by the Court is a mandatory 60-month sentence required by §924(c)(1)(A). This Court is required to impose, therefore, a sentence of at least 60 months; a low-end Guidelines sentence would be 106 months.

In its presentence report, U.S. Probation recommended that the Court vary downward substantially from the applicable Guidelines range. It noted the seriousness of the offenses and Mr. Thrower's criminal history as a juvenile and young adult. It also, however, acknowledged Mr. Thrower's struggles with depression, difficulties with losses of close family members, and limited opportunities. It recommended, in light of the totality of the circumstances, a sentence of 90 months.

///

### III.

### THE §3553(a) FACTORS, INCLUDING MR. THROWER'S PERSONAL CHARACTERISTICS AND THE SENTENCES IMPOSED UPON CO-DEFENDANTS, SUPPORT A VARIANCE TO A 60-MONTH SENTENCE.

Mr. Thrower requests this Court impose a 60-month sentence, one that constitutes a downward variance from the applicable Guidelines. This sentence is less than that this Court has the discretion to impose, but still represents a significant term of imprisonment and five years of a man's life. Together with the term of supervised release this Court is likewise required to impose, this sentence is sufficient, but not great than necessary, to further the policy considerations set forth in 18 U.S.C. §3553(a). The statutory purposes set forth in the law are advanced by the requested sentence in many ways, which counsel attempts to set forth herein.

**A.    Mr. Thrower's History and Characteristics (§3553(a)(1))**

Mr. Thrower is not the same (young) man he was in 2017, when these offenses were committed. He is now in his 30s, and having spent the last two years in custody in connection with these cases, he has grown considerably since 2017. Mr. Thrower is no longer a young hot-head who spends his time with the wrong crowd. Mr. Thrower's term of incarceration in connection with this offense, no matter the sentence imposed by this Court, will be his longest period of imprisonment. Already, it has been a blunt wake-up call. Mr. Thrower recognizes and appreciates that the conduct of his youth is not sustainable, that it is harmful to himself and his loved ones, and that it is the behavior of a foolish young man whom Mr. Thrower no longer wishes to be.

Although it does not excuse his conduct, Mr. Thrower's struggles in 2017 can be explained by the death of his mother the year before. Mr. Thrower was incredibly close with his mother. Having experienced, and still grieving from, the deaths of other family members before

2016, Mr. Thrower was nevertheless unprepared to lose his lifelong companion and role model. It is no surprise that Mr. Thrower worked to provide home care for his mother after her death, and then struggled to find work thereafter. The death of Mr. Thrower's mother sent Mr. Thrower spiraling into a period of depression and suicidal ideations, ones which he has been uncomfortable sharing or opening up about. In the two years following the death of his mother, Mr. Thrower experienced a profound send of helplessness and struggled to find meaning in his life.

But Mr. Thrower has recently been able to discover that meaning. Mr. Thrower wishes to end his term of incarceration as soon as possible so that he can be a father to his children and a partner to Ms. Haynes, his longtime girlfriend. The wake-up call provided by this prosecution and Mr. Thrower's term of incarceration woke Mr. Thrower from the stupor that followed his mother's death. He has expressed his eagerness to pursue therapy and mental health treatment for his depression as well as his excitement to earn his GED and pursue a career in trucking. While in jail, and largely due to restrictions on jail programming arising from the COVID-19 pandemic, Mr. Thrower has had little opportunity to further these goals. But within the last two weeks, digital GED programming has finally been made available, and Mr. Thrower has begun his classes. Over the duration of his incarceration, he has only become more resolute in his desire to provide for his family in the way he knows he failed to do prior to his arrest in connection with this case. In short, Mr. Thrower hopes to be given an opportunity to become a full, contributing member of society, a proud father, and a good partner. He is no longer a child, and with his newfound growth and maturity, he appreciates the efforts he must make to be more of the mean he knows he can be.

In fact, throughout this prosecution, Mr. Thrower has consistently emphasized his need to take responsibility for his actions and demonstrate his growth. From the outset, when Mr. Thrower was charged in only one case but knew himself to be the subject of a separate, ongoing investigation (which would later give rise to the 21-CR-00373 case), he insisted that he resolve both matters, rather than plead in the first case and attempt to escape confronting the second. When the second case was filed and Mr. Thrower confronted what appeared to be a 84-90 month sentencing range, he was disappointed by the lengthy sentence he faced. He nevertheless insisted on proceeding with a plea and acknowledging his responsibility. And when, following case relation and re-assessment by the attorneys, Mr. Thrower's final plea agreement took shape with a 106-117 month sentencing range, Mr. Thrower, though disappointed anew, still persisted, insisting that he plead guilty. He did so in order to demonstrate to his family that he takes responsibility for his actions no matter the consequences and to demonstrate to his community that he has grown beyond the adolescent/young adult who would shirk accountability.

Undersigned counsel can personally attest to Mr. Thrower's growth. Rarely has counsel had a more respectful, cool-headed, and kind client. Mr. Thrower is the type of man who begins every conversation, even with his attorney, with a genuine request to know how counsel is doing. He likewise ends every conversation, even with his attorney, with a blessing. He consistently shows his generosity of spirit and unerring graciousness. Even when frustrated, Mr. Thrower remains level-headed and looks to his faith in God for strength.

Mr. Thrower did not grow up with a silver spoon, and his upbringing, as summarized in the probation report, undoubtedly set him on the wrong path. His experiences with poverty and violence as a child damaged him, and he quickly fell victim to the thinking that his situation was

unescapable. Mr. Thrower did not have the hope and resilience he needed to envision a better future for himself.

But he has found that hope, and he has developed that resilience. Even if this Court imposes the sentence he requests, he will spend significantly more time in custody still. And during that time, he will continue to speak to Ms. Haynes and his children on a daily basis. He will continue to plan his future. And he will continue to pray for the strength he needs to overcome a disadvantaged upbringing to become the man he aims to be. Extending Mr. Thrower's sentence beyond the 60 months required to be imposed will not further this goal, but rather, will hinder it.

### B.      The Need to Avoid Unwarranted Sentencing Disparities (§3553(a)(6))

Mr. Thrower is not being sentenced in this case in a vacuum. His sentencing follows those of several co-defendants in the 19-CR-00043 case, and the sentences imposed upon those co-defendants bear directly on the sentence that should be imposed here.

Mr. Thrower is requesting a 60-month sentence. This is roughly in line with the sentences imposed upon Messrs. Frank (60 months), Moore-Williams (60 months), and Walker (63 months):

- **Mr. Frank**, who is in the same criminal history category as Mr. Thrower and was sentenced to 60 months, organized multiple drug trafficking transactions while on supervised release for a prior §924(c) conviction. Significantly, Mr. Frank was a recidivist drug trafficker who, according to materials produced by the government, was also involved in sex trafficking. *See* dkt. 303.

- Like Mr. Thrower, **Mr. Moore-Williams** was involved in a burglary not charged in the 19-CR-00043 case. Like Mr. Thrower, Mr. Moore-Williams possessed a firearm in

connection with his charged offense. And like Mr. Thrower, Mr. Moore-Williams faced a mandatory minimum of 60 months. *Unlike* Mr. Thrower, however, Mr. Moore-Williams was a prominent member of Daniel James' drug trafficking network, selling large quantities of crack cocaine on a daily basis for over a year. *See* dkt. 365. Nevertheless, Mr. Moore-Williams was given a sentence of 60 months.

- **Mr. Walker** was involved in multiple firearms sales, was described by Daniel James as one of the most dangerous members of the trafficking network, and, when approached by police, engaged in a dangerous vehicle chase that included his ramming of a patrol vehicle. *See* dkt. 428. This Court granted Mr. Walker's requested sentence of 63 months.

If this Court sentences Mr. Thrower to 60 months of incarceration, his sentence will be nearly double that imposed on Messrs. Murphy Jr. (37 months), Lemons-Woodard (37 months), and Kennedy-Palmer (24 months):

- During law enforcement's investigation, **Mr. Murphy Jr.** sold six different guns to a confidential informant and attempted to sell two others. He repeatedly violated the terms of his pretrial release, selling large amounts of drugs and ultimately having his release revoked. And on at least one occasion, he possessed a loaded firearm separate and apart from his sales. *See* dkt. 304. Mr. Murphy Jr. was sentenced to 37 months in prison.

- **Mr. Lemons-Woodard**'s circumstances were similar to those of Mr. Murphy Jr. Mr. Lemons-Woodard also sold multiple guns to the confidential informant and repeatedly violated the terms of his pretrial release. *See* dkt. 324 Despite being a recidivist firearms offender, Mr. Lemons-Woodard was sentenced to 37 months, just like Mr. Murphy Jr.

- **Mr. Kennedy-Palmer** is similar to Mr. Thrower in two important respects. Mr. Kennedy-Palmer was known to be involved in only a single transaction, and he carried a loaded

firearm in connection with his offense. *See* dkt. 305. While Mr. Thrower's circumstance is arguably more serious due to his commission of a separate burglary, Mr. Kennedy-Palmer's is arguably more serious due to his plainly greater involvement in the broader trafficking network. Mr. Kennedy-Palmer was sentenced to 24 months.

Finally, a 60-month sentence for Mr. Thrower would leave only one co-defendant with a significantly higher sentence: Mr. Rivera. Heavily involved in both the gun and drug trafficking aspects of the trafficking network in this case, Mr. Rivera was sentenced to 120 months pursuant to a C-plea. A Guidelines sentence in the range of 106-117 months for Mr. Thrower would render his sentence similar to that imposed upon Mr. Rivera, a plainly and significantly more culpable defendant.

None of Mr. Thrower's co-defendants were charged in two separate cases, and any one-to-one comparison is complicated by that fact. Nevertheless, Mr. Thrower urges this Court to consider the offense conduct and circumstances of Mr. Thrower's co-defendants, and the resulting sentences each received, in fashioning the proper sentence for Mr. Thrower. He contends that sentencing him in excess of 60 months would create an unwarranted disparity between him and his co-defendants.

C. **The Seriousness of the Offense and Other Factors Set Forth in §3553(a)(2)**

Of course, this Court must consider not only Mr. Thrower's personal circumstances, but the seriousness of the offense he committed and the needs for deterrence and public safety. Undoubtedly, Mr. Thrower's violations of the law are serious. Firearms pose an inherent danger to public safety, and their misuse can result in injury or death. But a 60-month sentence, the longest Mr. Thrower will have ever served, coming at a time in his life when his eyes have been recently opened to the folly of his youthful decisions, will afford entirely adequate deterrence to

ensure that Mr. Thrower never commits a firearm offense, or any other crime, ever again. When coupled with a lengthy term of supervised release, this Court has even further assurance that Mr. Thrower will be able to right his path. A 60-month sentence alone is more time than Mr. Thrower would have been given if not for his §924 conviction; it alone communicates the gravity of Mr. Thrower's choice to not only commit a burglary, but to bring a gun for its commission.

Five years of imprisonment is a serious sentence for serious crimes. It demonstrates the gravity of these convictions. And it is sufficient for that purpose.

### D.     The Nature and Circumstances of the Offense (§3553(a)(1))

Finally, Mr. Thrower addresses the offenses themselves. He makes no excuses for his conduct. In one instance, he assisted in the sale of an illegal firearm. In another, he assisted in the burglary of a grow house. To make matters worse, he carried a firearm in the commission of the latter offense, and although he did so for self-protection, the carrying of that gun had the effect of increasing the potential for violence or injury. Certainly, these were terrible choices, and they were ones made by Mr. Thrower.

When looking at these offenses themselves, Mr. Thrower only asks this Court to consider them in context. The single gun transaction in which Mr. Thrower was involved was the only one to which Mr. Thrower was connected over the course of ATF's lengthy and sprawling investigation into an East Oakland drug trafficking operation. Mr. Thrower was not a regular participant in this network, and the transaction in question was not one in which Mr. Thrower directed the sale to the confidential informant. Rather, Mr. Thrower was summoned for a delivery, which he made. Whatever the culpability of Mr. Washington, the man who actually engaged the informant and coordinated the buy, Mr. Thrower's role was clear – he delivered a firearm when requested to do so by an associate. Of course, this was criminal conduct, and it was necessary, if

not sufficient, for the gun to change hands. But it stands in stark contrast to the involvement of many of Mr. Thrower's co-defendants in this trafficking network, and it suggests that Mr. Thrower's involvement with these conspirators was quite peripheral.

Likewise, Mr. Thrower will, by operation of law, be punished severely for his choice to bring a gun when stealing marijuana plants from a warehouse. He notes only that the gun was not brought with the intention of committing violence, but rather, for purposes of self-defense. The warehouse was broken into at night, when, presumably, no one was expected to be present. Mr. Thrower did not wield the gun during the break-in, and surveillance video of the burglary does not show Mr. Thrower or his co-defendants acting as if they expected opposition. The gun Mr. Thrower possessed on that night was a contingency plan in case he and his associates were attacked. It was a terrible contingency plan, and a terrible choice. But it is one that will necessarily cost Mr. Thrower years of his liberty. He asks merely that this Court not order that even more years of his life be taken from him.

### IV.

### **CONCLUSION.**

For all of the reasons above, Mr. Thrower respectfully requests this Court impose a sentence of 60 months of imprisonment followed by three years of supervised release.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: March 17, 2022                     By: /s/ Alexander P. Guilmartin, Esq.
                                                              ALEXANDER P. GUILMARTIN, ESQ.
                                                              Attorneys for Defendant **Vernell Thrower**